IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

THOMAS E. PEREZ, Secretary of Labor:          CIVIL ACTION
United States Department of Labor  :
                                   :          NO. 14-4286
          Plaintiff,               :
                                   :
     v.                            :
                                   :
RICHARD J. KWASNY, et al.          :
                                   :
          Defendants.              :


M E M O R A N D U M

EDUARDO C. ROBRENO, J.                          February 8, 2016


        Presently before the Court are cross-motions for
summary judgment filed by the parties.  The Secretary of Labor
(the "Secretary") asserts in his motion that Richard Kwasny
violated Title I of the Employee Retirement and Income Security
Act of 1974, as amended 29 U.S.C. § 1001, et seq. ("ERISA") by
failing to deposit employee contributions into the Kwasny and
Reilly, P.C., 401(k) Profit Sharing Plan (the "Plan").  In his
cross-motion for summary judgment, Kwasny raises four defenses
to the action.  For the reasons set forth below, the Court will
grant the Secretary's motion and deny Kwasny's motion.

I.   **FACTUAL BACKGROUND**[1] **AND PROCEDURAL HISTORY**

        The Secretary brought this action to restore
$40,416.30 in losses (plus prejudgment interest) sustained by
the Plan, an ERISA employee benefit plan.[2]  Based upon the
evidence, the Plan sustained these losses because Kwasny, a
managing partner of the law firm of Kwasny & Reilly, P.C. (the
"Firm") and a trustee and fiduciary of the Plan[3], withdrew
contributions from his employees' paychecks but purposefully
failed to deposit those contributions into the Plan in a timely

---

[1]        Unless otherwise noted, the facts reported herein are
those the parties do not dispute or were admitted pursuant to
the Court's July 20, 2015 Order (ECF No. 37).  The Court views
disputed facts in the light most favorable to the nonmoving
party.

[2]        A defined contribution ERISA employee benefit plan
such as the one at issue allows plan members to contribute a
portion of their salary, pre-tax, into individual retirement
accounts.  See 29 U.S.C. § 1002(34).  ERISA was enacted to
create "complex and far-reaching rules designed to protect the
integrity of [employee benefit] plans and the expectations of
their participants and beneficiaries." Barrowclough v. Kidder,
Peabody & Co., 752 F.2d 923, 929 (3d Cir. 1985), overruled on
other grounds, Pritzker v. Merrill Lynch, Pierce, Fenner &
Smith, Inc., 7 F.3d 1110, 1111 (3d Cir. 1993).

[3]        The evidence reveals that Kwasny was both a trustee
and a fiduciary of the Plan.  He admitted to being a trustee and
under ERISA he is also a fiduciary since his deemed admissions
establish that he exercised control respecting the management or
disposition of the Plan assets.  29 U.S.C. § 1002(21)(A); see
(ECF No. 26-1, ¶¶ 2, 9-10).

manner.[4]  See First Req. for Admis. (ECF No. 26-1, ¶¶ 1-2, 8-

13).[5]  Moreover, Kwasny directed that the withheld contributions

be commingled with the general assets of the Firm and be used

for the benefit of the Firm.  (Id. at ¶¶ 9-10).

    After investigating a substantiated complaint from a

Plan member in the fall of 2011, the Secretary filed this action

---

[4]     $40,416.30 of the employee contributions were never
forwarded to the Plan, while $2,099.06 in contributions were
eventually forwarded late and without interest.

[5]     During a pretrial conference on July 20, 2015, the
Court granted the Secretary's motion to deem admitted his
requests for admissions.  (ECF No. 37).  The Court will rely on
these admissions as under Federal Rule of Civil Procedure 36(b)
"[a] matter admitted under this rule is conclusively established
unless the court, on motion, permits the admission to be
withdrawn or amended."  Fed. R. Civ. P. 36(b); see also
Anchorage Assocs. v. Virgin Islands Bd. of Tax Review, 922 F.2d
168, 176 n.7 (3d Cir. 1990) (providing that "'deemed admissions'
under Fed. R. Civ. P. 36(a) are sufficient to support orders of
summary judgment").  Although the Court explained to Kwasny
during the July 20, 2015 conference that if he wanted "to be
relieved from those admissions, [he could] file a motion" by
August 7, 2015, Kwasny did not move to have the admissions
withdrawn or amended.  7/20/15 Pretrial Conf., Tr. 13-14.

    In his current motion, Kwasny does allege facts that
conflict with the deemed admissions and attaches a declaration
in support thereof.  However, these allegations are not
tantamount to a motion to withdraw and they will not overrule
the admissions.  Fed. R. Civ. P. 36(b); see also Jiminez v. All
Am. Rathskeller, Inc., 503 F.3d 247, 251 (3d Cir. 2007)
(explaining that "'a party may not create a material issue of
fact to defeat summary judgment by filing an affidavit disputing
his or her own sworn testimony without demonstrating a plausible
explanation for the conflict'") (quoting Baer v. Chase, 392 F.3d
609, 624 (3d Cir. 2004)); Mangual v. Prudential Lines, Inc., 53
F.R.D. 301, 303 (E.D. Pa. 1971) (providing that "the subsequent
denial of an admitted fact is a self-serving declaration and is
normally inadmissible in evidence").

3

on July 16, 2014 and the instant motion for summary judgment on
August 12, 2015.  (ECF Nos. 1 & 41).  In his motion, the
Secretary seeks the following relief:  (1) restitution of the
$40,416.30 in withheld employee contributions as well as
interest on that amount; (2) removal of Kwasny as a Plan
fiduciary and the appointment of an independent Plan fiduciary,
paid for by Kwasny, to manage and dispose of the Plan assets;
and (3) a permanent injunction against Kwasny ever serving as a
fiduciary of any other ERISA plan.  Kwasny has agreed to the
injunctive relief and claims that restitution is the only
remaining issue.  Kwasny filed his response and cross-motion for
summary judgment on September 23, 2015.  (ECF No. 48).

## II.  STANDARD OF REVIEW

Summary judgment is appropriate if there is no genuine
dispute as to any material fact and the moving party is entitled
to judgment as a matter of law.  Fed. R. Civ. P. 56(a).  "A
motion for summary judgment will not be defeated by 'the mere
existence' of some disputed facts, but will be denied when there
is a genuine issue of material fact."  Am. Eagle Outfitters v.
Lyle & Scott Ltd., 584 F.3d 575, 581 (3d Cir. 2009) (quoting
Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247 (1986)).  A
fact is "material" if proof of its existence or nonexistence
might affect the outcome of the litigation, and a dispute is
"genuine" if "the evidence is such that a reasonable jury could

return a verdict for the nonmoving party." Anderson, 477 U.S. at 248.

The Court will view the facts in the light most favorable to the nonmoving party. "After making all reasonable inferences in the nonmoving party's favor, there is a genuine issue of material fact if a reasonable jury could find for the nonmoving party." Pignataro v. Port Auth., 593 F.3d 265, 268 (3d Cir. 2010). While the moving party bears the initial burden of showing the absence of a genuine issue of material fact, meeting this obligation shifts the burden to the nonmoving party who must "set forth specific facts showing that there is a genuine issue for trial." Anderson, 477 U.S. at 250 (quoting First Nat'l Bank of Ariz. v. Cities Serv. Co., 391 U.S. 253, 288 (1968)) (internal quotation marks omitted).

The standard for summary judgment is identical when addressing cross-motions for summary judgment. See Lawrence v. City of Phila., 527 F.3d 299, 310 (3d Cir. 2008). When confronted with cross-motions for summary judgment, "[t]he court must rule on each party's motion on an individual and separate basis, determining, for each side, whether a judgment may be entered in accordance with the Rule 56 standard." Schlegel v. Life Ins. Co. of N. Am., 269 F. Supp. 2d 612, 615 n.1 (E.D. Pa. 2003) (quoting 10A Charles A. Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure § 2720 (3d ed. 1998)).

## III. DISCUSSION

A.   The Secretary's Motion for Summary Judgment (ECF No. 41)

Based primarily upon the deemed admissions, it is clear that there are no genuine disputes as to any material facts regarding the Secretary's motion for summary judgment. The Secretary contends that the admissions establish violations of Kwasny's duties under ERISA to:  (1) ensure that Plan assets are held in a trust account, 29 U.S.C. § 1103; (2) act solely in the interest of the Plan participants and their beneficiaries, 29 U.S.C. § 1104(a)(1)(A)); (3) act prudently, 29 U.S.C. § 1104(a)(1)(B); (4) prevent the Plan from engaging in a direct or indirect transfer of Plan assets for the benefit or use of a party in interest, 29 U.S.C. § 1106(a)(1)(D); and (5) refrain from dealing with the Plan's assets for the fiduciary's own interest, 29 U.S.C. § 1106(b)(1).  The evidence and deemed admissions support the Secretary's allegations.

Specifically, Kwasny's admissions provide, inter alia, that: (1) Kwasny was a trustee of the Plan; (2) between September 7, 2007 and November 13, 2009, $41,936.73[6] was withheld from employee paychecks but not deposited into the Plan; (3)

---

[6]    Although Kwasny was deemed to have admitted that $41,936.73 was withheld in employee contributions, the Secretary alleges that ultimately only $40,416.30 was withheld and not repaid into the plan.

Kwasny directed that the withheld employee contributions be commingled with the general assets of the Firm; (4) he directed that the employee contributions be used for the benefit of the Firm; and (5) he was responsible for determining if the employees' payroll checks and contribution checks were issued by Paychex, the company that prepared the Firm's payroll. (ECF No. 26-1, ¶¶ 1-2, 8-10).

The Secretary also relies on the declaration of Kathleen Meske, a bookkeeper at the Firm. She declared that Kwasny instructed her to send the employee contribution checks to TD Ameritrade, the Plan asset custodian, only after he paid employee wages, himself, and the firm's outstanding bills; and that Kwasny was the only person at the Firm with the ability to withhold payments from the Plan. (ECF No. 41-11, ¶¶ 7-8). Kwasny argues that Meske's declaration should be ignored because she was not privy to all of the discussions among the Firm partners. However, even if that were true, she certainly is capable of declaring what Kwasny instructed her to do. Whether Kwasny was the only person with the ability to withhold Plan payments is not important. It is only important that Kwasny so instructed Meske.

In light of this evidence, the Court will grant the Secretary's motion for summary judgment as there are no genuine disputes as to any material facts. Other than to deny certain

7

facts established by his admissions,[7] Kwasny does not provide any significant defense against this motion.  His self-serving conclusory declaration does not amount to a scintilla of evidence which would create a genuine dispute, especially in light of the contradictory deemed admissions.  See Kirleis v. Dickie, McCamey & Chilcote, P.C., 560 F.3d 156, 161 (3d Cir. 2009) (providing that "conclusory, self-serving affidavits are insufficient to withstand a motion for summary judgment") (internal quotation marks omitted); Mangual, 53 F.R.D. at 303. Instead, Kwasny relies primarily on his cross-motion for summary judgment asserting several defenses discussed below.  Thus, unless one of his defenses were to be viable, the Secretary is entitled to an entry of judgment in his favor and against Kwasny.

---

[7]      These include that:  (1) both he and his partner Mark Reilly were responsible for determining if payroll and contribution checks were issued; (2) that he had no authority to deduct money from employee pay contributions as that authority was vested solely in the members of the Firm; and (3) that neither he nor the Firm retained employee contributions from their pay.  Instead, he asserts that sometimes the employees did not receive their pay and that is why there were no contributions for those pay periods.  See Kwasny Resp. (ECF No. 48); Kwasny Decl. (ECF No. 48-3).

     B.    <u>Kwasny's Cross-Motion for Summary Judgment (ECF No.
48)</u>

In his cross-motion, Kwasny raises four defenses which
he claims defeat the Secretary's action:  (1) statute of
limitations; (2) res judicata; (3) failure to join an
indispensable party; and (4) latches.[8]

     1.    <u>Three Year Statute of Limitations</u>

ERISA bars actions for breach of fiduciary duty "after
the earlier of (1) six years after ... the date of the last
action which constituted a part of the breach or violation ...
or (2) three years after the earliest date on which the
plaintiff had actual knowledge of the breach or violation ...."
29 U.S.C. § 1113.  Here, Kwasny contends that the Secretary had
actual knowledge of the breaches more than three years before
filing the complaint.[9]

---

[8]     As noted by the Secretary, "it is well established
that the United States is not subject to the defense of laches
in enforcing its rights."  <u>United States v. St. John's Gen.
Hosp.</u>, 875 F.2d 1064, 1071 (3d Cir. 1989) (citing <u>United States
v. Summerlin</u>, 310 U.S. 414, 416, (1940)); <u>Martin v. Carr</u>, No.
CIV. A. 91-1071, 1993 WL 172885, at *1-2 (W.D. Pa. Jan. 22,
1993) (providing that latches is not available against the
United States in an ERISA action).  In his reply, Kwasny does
not argue otherwise.  Thus, the Court will not discuss this
alleged defense further.

[9]     Kwasny first unconvincingly argues that the Plan
participants' knowledge should be imputed to the Secretary
because he brought the suit on their behalf.  He provides no
legal support for this conclusory contention.  Indeed, the
Secretary has not primarily brought this action on behalf of
these specific individuals but instead "has an even stronger and

Specifically, Kwasny asserts that in 2010, after Larry Haft, an employee of the Firm and member of the Plan, complained to the Department of Labor about alleged breaches of fiduciary duty regarding the Plan, a Department of Labor investigator came to the Firm office and reviewed the ERISA books and records, making copies of them.  His only evidence of this assertion is his own declaration.  (ECF No. 48-3, ¶ 41).  However, Kwasny does not assert that he saw the investigator or that he provided any materials to him.  Indeed, he provides no basis for this statement.

The Secretary relies on two declarations for his argument that he lacked actual knowledge of the duty breaches in or before 2010:  one from Trudy Logan, a benefits adviser in the Philadelphia Regional Office of Employee Benefits Security Administration ("EBSA"), (ECF No. 49-1); and one from Norman Jackson, Deputy Regional Director of the EBSA.  (ECF No. 49-2).

---

paramount obligation to protect the very integrity, heart and lifeline of the program itself." Sec'y of Labor v. Fitzsimmons, 805 F.2d 682, 692-93 (7th Cir. 1986); see also Landwehr v. DuPree, 72 F.3d 726, 732 (9th Cir. 1995) (providing that the ERISA "limitations period begins to run on the date that the person bringing suit on behalf of the plan learned of the breach or violation" regardless of whether someone else associated with the plan had actual knowledge earlier).  Given the diversity of interests and lack of privity between the Secretary and the Plan participants, the Court will not entertain this argument further as it is meritless.  The Secretary's interests and his lack of privity with private plaintiffs are discussed in detail in Section III.B.2.

Logan declared that in 2006 and 2010, the EBSA received complaints regarding a failure to remit employee contributions to a 401(k) plan that was not identified at the time as the Plan. (ECF No. 49-1, ¶ 6). She declared that the Plan participant who lodged the complaints did not provide the EBSA with any documents or other evidence to substantiate the claims. (Id. at ¶ 7). As a result, the inquiries were not referred for enforcement and were instead closed. (Id.). She also declared that the EBSA received a letter on September 26, 2011 from a Plan participant asserting breaches of fiduciary duty specifically regarding the Plan. (Id. at ¶ 8). After this individual provided documentary evidence of the breaches, Logan referred the matter for enforcement on November 1, 2011. (Id. at ¶¶ 10-12).

Jackson declared that the Plan was first referred for enforcement on November 1, 2011 and that the EBSA did not investigate the Plan before that date. (ECF No. 49-2, ¶¶ 3-4). He also asserted that at no time in 2006 or 2010 did any EBSA investigator travel to the Firm or review any books or records related to the Plan or make copies thereof. (Id. at ¶ 5).

Under 29 U.S.C. § 1113, constructive knowledge of the breach of fiduciary duties is insufficient to commence the three year statute of limitation. Gluck v. Unisys Corp., 960 F.2d 1168, 1176 (3d Cir. 1992). Instead, the plaintiff must have

actual knowledge of the breach.  Id., 29 U.S.C. § 1113.  The
actual knowledge requirement of "Section 1113 sets a high
standard for barring claims against fiduciaries prior to the
expiration of the section's six-year limitations period."  Id.
Kwasny must prove that the Secretary had "actual knowledge of
all material facts necessary to understand that some claim
exists, which facts could include necessary opinions of experts,
knowledge of a transaction's harmful consequences, or even
actual harm."  Id. at 1177 (internal citations omitted).

        The Court concludes that receiving calls in 2006 and
2010 of possible ERISA violations regarding an unidentified plan
did not provide the Secretary with actual notice of Kwasny's
fiduciary duty violations.  Instead, the Secretary received
actual notice, and the three year statute of limitations began
to run, in the fall of 2011 when he received evidence
documenting the breaches.  Thus, the Secretary's suit was
brought within the applicable statute of limitations.

        Kwasny's declaration that in 2010 a Department of
Labor investigator came to the Firm office and reviewed the
ERISA books and records, making copies of them, is self-serving,
conclusory, and unsubstantiated.  There is no indication whether
he claims to have witnessed these events or upon what facts this
statement is based.  (ECF No. 48-3, ¶ 41).  Thus, the Court
concludes that Kwasny's declaration does not meet his burden of

12

proof in establishing that there is a genuine dispute regarding whether the Secretary had actual knowledge of the breaches before the fall of 2011.  See Maldonado v. Ramirez, 757 F.2d 48, 51 (3d Cir. 1985) (providing that "[a]n affidavit that is essentially conclusory and lacking in specific facts is inadequate to satisfy the movant's [summary judgment] burden") (interior quotation marks omitted).

      2.  Res Judicata

      Kwasny next argues that the Secretary's suit is barred by the doctrines of claim preclusion and/or issue preclusion.[10] "Claim preclusion, or res judicata, is a defense asserted when a case is essentially identical to one that has previously been adjudicated."  R & J Holding Co. v. Redevelopment Auth. of Cty. of Montgomery, 670 F.3d 420, 427 (3d Cir. 2011).  "Just as claim preclusion bars re-litigation of an entire case, issue preclusion [, or collateral estoppel] bars re-litigation of discrete issues, even in a case based on an entirely different claim."  Id. at 429.

---

[10]   Res judicata is often defined as encompassing both claim and issue preclusion, but in its narrowest sense it only includes claim preclusion.  United States v. 5 Unlabeled Boxes, 572 F.3d 169, 174 (3d Cir. 2009) (recognizing the narrow definition of the term but providing that "[t]his court has previously noted that the preferred usage of the term res judicata encompasses both claim and issue preclusion") (internal quotation marks omitted).  While Kwasny clearly invokes claim preclusion, he also discusses issue preclusion and it is unclear whether he is asserting that it applies in this case.

Although Kwasny's argument only appears to implicate claim preclusion, under Pennsylvania law, the applicability of either of these doctrines would require privity between the Secretary and any previous plaintiff.[11]  In support of his argument, Kwasny asserts that Haft previously successfully sued him and the Firm for failure to deposit employee contributions into the Plan and for failure to pay wages; seeking and

---

[11]     Claim preclusion:

> requires: (1) a final judgment on the merits in a prior suit involving; (2) the same parties or their privities [sic]; and (3) a subsequent suit based on the same cause of action.

Blunt v. Lower Merion Sch. Dist., 767 F.3d 247, 276 (3d Cir. 2014) (quoting Bd. of Trs. of Trucking Emps. of N. Jersey Welfare Fund, Inc.-Pension Fund v. Centra, 983 F.2d 495, 504 (3d Cir. 1992)), cert. denied sub nom., Allston v. Lower Merion Sch. Dist., 135 S. Ct. 1738 (2015).  Issue preclusion will apply when:

> (1) the issue decided in the prior case is identical to the one presented in the later action; (2) there was a final adjudication on the merits; (3) the party against whom the plea is asserted was a party or in privity with a party in the prior case;  (4) the party . . . against whom the doctrine is asserted had a full and fair opportunity to litigate the issue in the prior proceeding; and (5) the determination in the prior proceeding was essential to the judgment.

Metro. Edison Co. v. Pennsylvania Pub. Util. Comm'n, 767 F.3d 335, 351 (3d Cir. 2014) (quoting Office of Disciplinary Counsel v. Kiesewetter, 585 Pa. 477, 889 A.2d 47, 50-51 (2005)), cert. denied, 135 S. Ct. 2372 (2015).

receiving reimbursement.  See Haft Compl. (ECF No. 48-4).
Specifically, Haft received a judgment against Kwasny in the
amount of $32,677.15.  (ECF No. 48-5).  Kwasny asserts that the
Secretary is now seeking a judgment for the same sums that Haft
already received based upon the same claims raised by Haft.

However, as explained by the Seventh Circuit Court of
Appeals, the Secretary is not in privity with a private ERISA
plaintiff like Haft.  Fitzsimmons, 805 F.2d at 692-93.  In
Fitzsimmons, the court held that "[t]he Government is not barred
by the doctrine of res judicata from maintaining independent
actions asking courts to enforce federal statutes implicating
both public and private interests merely because independent
private litigation has also been commenced or concluded."  Id.
at 692.  Although recognizing that "[p]rivity between parties is
established where those parties' interests are so closely
aligned that they represent the same legal interests," the court
explained that the interests of the Department of Labor in an
ERISA action are not limited to merely the fund beneficiaries'
interests.  Id. at 688.  Instead, the Department of Labor has
strong independent interests in litigating ERISA violations
relating to, inter alia, "the impact of employee benefit plans
on the stability of employment, the successful development of
industrial relations, the revenues of the United States, the

free flow of commerce, and the general welfare of the nation."

Id. at 690-91.  The court provided that:

> aside from its duty of protecting the
> individual beneficiaries of these pension
> programs, the government in this case
> clearly has an even stronger and paramount
> obligation to protect the very integrity,
> heart and lifeline of the program itself.
> In an ERISA action the Government
> participates as a party in order that it
> might sustain the very public confidence so
> necessary to the vitality of the enormous
> private pension fund system that provides
> billions of dollars of capital for
> investments affecting interstate commerce,
> and that substantially influences the
> revenues of the United States; further, the
> Secretary sues to enforce the fiduciary
> obligations undertaken by trustees of these
> pension funds and to assure the very
> uniformity of enforcement of the law under
> the ERISA statutes. A private litigant
> certainly is in no position to assume, much
> less argue, that the Secretary's
> responsibility is limited to ensuring the
> uniform enforcement of the ERISA statutes
> since his only interest in bringing an
> action is to seek recovery of his own
> losses.

Id. at 692-93.

The Fifth Circuit Court of Appeals reached a similar

decision on this issue in Donovan v. Cunningham, 716 F.2d 1455

(5th Cir. 1983).  In determining that the Secretary's interests

were not co-extensive with those of private plaintiffs, the

court explained that:

> the Secretary in the present [ERISA] case
> seeks to vindicate a public interest that is
> broader than the interests of the [private]
> plaintiffs in the Alabama lawsuit.  Those

16

> plaintiffs were interested in recouping only
> their own economic losses; the Secretary
> seeks to determine the legality of specific
> conduct and to prevent those who have
> engaged in illegal activity from causing
> loss to any future ERISA plan participant.
> Thus, although the monetary settlement
> sought in the prior litigation may have
> achieved the goals of the private
> plaintiffs, it is clearly inadequate to
> vindicate the broader interest of the
> government. Accordingly, the plaintiffs in
> the Alabama lawsuit were not proper
> representatives of the government interest
> and the Secretary is not precluded from
> relitigating here the issues raised in that
> case.

716 F.2d at 1462-63. The Court agrees with the analysis of the

Fifth and Seventh Circuit Courts of Appeals and holds that there

is no privity between the Secretary and Haft. Thus, there is no

res judicata theory under which Kwasny may prevail.

The Secretary acknowledges that the Court may offset

any funds paid to the Plan due to private litigation. However,

he disputes Kwasny's contention that Haft received such funds.

Instead, the Secretary asserts that the judgment in Haft's favor

represented only punitive damages following Haft's motion for

sanctions for failure to comply with a previous court order.

The exhibits Kwasny uses to support his argument to

the contrary bear out the Secretary's position: on August 29,

2012, upon consideration of Haft's motion for sanctions, the

Bucks County Court of Common Pleas awarded punitive damages

against Kwasney in the amount of $32,677.15 to be awarded to

17

Haft.  (ECF No. 48-5, p. 2), <u>see also</u> Def's cross-mot. (ECF No.
48-1, p. 3).  Kwasny does not provide any other signed court
order indicating any other award against him.  Haft, in his
complaint, does allege that the Defendants failed to deposit
into the Plan his employee and employer-matching contributions
in the amount of $32,677.15.  (ECF No. 48-4, p. 3).[12]  While the
Court recognizes that the two matching sums are unlikely to be
purely coincidental, the actual judgment in the case was based
solely on the punitive damages order.[13]  Thus, there is no need
to offset this award against the funds sought in this case as
Haft was not awarded judgment on his underlying claims regarding
his withheld Plan contributions.

> 3.   Failure to Join an Indispensable Party

As Kwasny's final defense, he alleges that the
Secretary failed to join an indispensable party and that, as a
result, the action should be dismissed.  Kwasny does not provide
any legal support for this contention.  Specifically, Kwasny
alleges that the Secretary should have joined his partner in the
firm and co-trustee, Mark Reilly.  Kwasny asserts that Reilly
introduced the Plan to him and signed all of the initial

---

[12]      Haft also sought $30,122.53 in unpaid wages.  (ECF No.
48-4, p. 3).

[13]      The Court notes that the punitive damage award order
specifically stated that Kwasny could move for reconsideration
if he provided complete discovery responses to the Secretary and
paid him $1,000.  (ECF No. 48-5, p. 2).

documents forming the Plan.  He alleges that he "did not participate in the formation of the Plan and only signed, as a designated co-trustee where told, and as an accommodation." (ECF No. 48-1, p. 4).  Kwasny contends that all decisions regarding the Plan contributions were made jointly with Reilly or, in some cases, solely by Reilly.

        As stated above, the summary judgment record contains deemed admissions from Kwasny establishing, inter alia, that: (1) he directed that the withheld employee contributions be commingled with the general assets of the Firm; (2) he directed that the employee contributions be used for the benefit of the Firm; and (3) he was responsible for determining if payroll checks and contribution checks were issued by Paychex to the employees.  (ECF No. 26-1, ¶¶ 1, 9-10).  As discussed previously, Kwasny's self-serving conclusory and unsupported declaration to the contrary does not relieve him from these admissions.[14]

        The liability of ERISA fiduciaries is typically joint and several.  Struble v. New Jersey Brewery Employees' Welfare Trust Fund, 732 F.2d 325, 332 (3d Cir. 1984) (providing that a plaintiff is not required to "name all of the trustees as

---

[14]        Under 29 U.S.C. § 1105(b)(1), Kwasny also had a duty to use reasonable care to prevent his co-trustees from committing fiduciary breaches.  If Reilly is also responsible for the duty breaches, Kwasny breached this duty as well.

defendants. It is a well-established principle of trust law that multiple trustees who are at fault may be held jointly and severally liable. See Restatement (2d) of Trusts § 258 (1959). If the Union Trustees are at fault, the defendants may join them"), abrogated on other grounds, Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101 (1989).  The Secretary correctly submits that Kwasny's solution to this perceived wrong was to join Reilly as a defendant.  The fact that Kwasny asserts that he "would never do that to a fellow attorney" does not lift his responsibilities nor remove the joint and several liability. Def. Reply (ECF No. 50, p. 5).  As a result, Reilly is not an indispensable party such that his absence should derail the Secretary's case.  In that none of Kwasny's defenses is meritorious, his motion will be denied and judgment will be entered in favor of the Secretary and against Kwasny.

> 4.   Relief Requested

In his motion for summary judgment, the Secretary requests the following relief:  (1) restitution of the $40,416.30 in withheld employee contributions as well as interest on that amount (which as of February 3, 2015 was $9,798.85); (2) removal of Kwasny as a Plan fiduciary and the appointment of an independent Plan fiduciary, paid for by Kwasny, to manage and dispose of the Plan assets; and (3) a permanent injunction against Kwasny ever serving as a fiduciary

of any other ERISA plan.  Kwasny has agreed to the injunctive
relief and claims that restitution is the only remaining issue.
He is silent regarding his payment for the independent Plan
fiduciary, thus, it is unclear whether he opposes this relief.

> When an ERISA fiduciary breaches his duties, he is:
>
>> personally liable to make good to such plan
>> any losses to the plan resulting from each
>> such breach, and to restore to such plan any
>> profits of such fiduciary which have been
>> made through use of assets of the plan by
>> the fiduciary, and shall be subject to such
>> other equitable or remedial relief as the
>> court may deem appropriate, including
>> removal of such fiduciary.

29 U.S.C. § 1109(a).  The Court must require a breaching
fiduciary to restore a plan to the position it would have been
in but for that fiduciary's illegal conduct.  Perez v. Koresko,
86 F. Supp. 3d 293, 392-93 (E.D. Pa. 2015) (citing Donovan v.
Bierwirth, 754 F.2d 1049, 1056 (2d Cir. 1985)).  "A federal
court enforcing fiduciary obligations under ERISA is thus given
broad equitable powers to implement its remedial decrees."
Delgrosso v. Spang & Co., 769 F.2d 928, 937 (3d Cir. 1985).

Because Kwasny has withheld employee contributions
from the Plan, restitution of those funds is the obvious first
step in the restoration of the Plan.  Moreover, the availability
of prejudgment interest on those amounts "exists to make
plaintiffs whole and to preclude defendants from garnering
unjust enrichment."  Nat'l Sec. Sys., Inc. v. Iola, 700 F.3d 65,

102 (3d Cir. 2012); Anthuis v. Colt Indus. Operating Corp., 971
F.2d 999, 1010 (3d Cir. 1992) (providing that "in the district
court's discretion, prejudgment interest may be awarded for a
denial of pension benefits").  When Kwasny failed to deposit the
funds into the Plan, he deprived the participants of the
interest on their investment.  In order to place the Plan and
its participants in the same position that they would have been
in, but for the breaches, Kwasny must also remit interest on the
withheld funds.

        The Secretary suggests that the appropriate interest
rate is the rate that the IRS charges taxpayers who underpay
their taxes.  See 26 U.S.C. § 6621.  Kwasny does not dispute the
fairness of this rate.  See McLaughlin v. Cohen, 686 F. Supp.
454, 458 (S.D.N.Y. 1988) (applying the IRS rate from Section
6621 and noting that "the interest rate allowable in ERISA cases
is like other elements of an equitable recovery, subject to the
discretion of the Court") (internal quotation marks omitted).
The Court concludes that the IRS rate is equitable.

        To the extent that Kwasny contends that he should not
pay for the independent fiduciary, the Court disagrees.  Since
Kwasny has conceded his position as Plan fiduciary, a new
fiduciary must be appointed to oversee the Plan.  This is an
expense that would not have accrued but for Kwasny's breaches.
Therefore, it is just that he pay the costs associated with the

fiduciary in order to make the Plan whole.  See Chao v. Malkani, 216 F. Supp. 2d 505, 518-19 (D. Md. 2002), aff'd, 452 F.3d 290 (4th Cir. 2006) (ordering the defendants to pay the costs associated with an independent trustee); see also Donovan v. Mazzola, 716 F.2d 1226, 1238 (9th Cir. 1994) (affirming the district court's decision to appoint an investment manager).

The Court concludes that the relief sought by the Secretary is reasonable.  As a result, it will grant the relief discussed above.

## IV.  CONCLUSION

For the reasons set forth, the Court will grant the Secretary's motion for summary judgment, entering judgment in his favor and against Kwasny, and will deny Kwasny's motion.

An appropriate order follows.