```
         IN THE UNITED STATES DISTRICT COURT
       FOR THE EASTERN DISTRICT OF PENNSYLVANIA
```

| | |
|---|---|
| THOMAS E. PEREZ, Secretary of Labor: United States Department of Labor | CIVIL ACTION |
| Plaintiff, | NO. 14-4286 |
| v. | |
| RICHARD J. KWASNY, et al. | |
| Defendants. | |

M E M O R A N D U M

EDUARDO C. ROBRENO, J.                              February 8, 2016

Presently before the Court is the Secretary of Labor's (the "Secretary") motion for default judgment against the law firm of Kwasny and Reilly, P.C. (the "Firm"). The Secretary seeks a default judgment ruling that the Firm violated Title I of the Employee Retirement and Income Security Act of 1974, as amended 29 U.S.C. § 1001, et seq. ("ERISA") due to its failure to forward employee contributions to the Kwasny and Reilly, 401(k) Profit Sharing Plan (the "Plan") in violation of ERISA.

I.  **PROCEDURAL HISTORY**

The Secretary filed this ERISA action on July 16, 2014. The Firm was served with a complaint and summons in compliance with Federal Rule of Civil Procedure 4(e) on

September 8, 2014. The Plaintiff filed the proof of service on September 19, 2014.

On October 24, 2014, Richard Kwasny, representing all of the Defendants in the case pro se, filed an answer to the Secretary's complaint. The Secretary filed a motion to strike the answer asserting that Kwasny could not represent the other Defendants (having previously had his license to practice suspended). On November 19, 2014, the Court granted the Secretary's motion to strike. On November 21, 2014, Kwasny filed a response to the motion to strike in which he stated that he intended to file the answer only on his behalf and agreed to withdraw the answer on behalf of the Firm and the Plan. Kwasny requested an opportunity to address the Court prior to the entry of any default judgment. He stated that neither the Firm nor the Plan have any assets and cannot defend the action. He noted that the causes of action are identical against all Defendants, and "judgment against one would result in judgment against all." Therefore, he requested that judgment not be entered against the Plan and the Firm.

On December 1, 2014, the Secretary filed a request for default under Rule 55 against the Firm, since it failed to plead or otherwise defend itself. The Clerk of Court entered default the same day. On January 22, 2015, the Court held a conference regarding, inter alia, Kwasny's response to the motion to strike

and the Secretary's request for default. On August 12, 2015, the Secretary filed the instant motion for default judgment against the Firm. The Firm failed to respond to the motion and at no time has it entered an appearance, filed a pleading, or participated in the litigation in any way.

## II. ALLEGATIONS IN THE COMPLAINT

In his complaint, the Secretary alleges that the Firm and Richard Kwasny, a partner at the Firm, established the ERISA Plan so that Firm employees could contribute a portion of their pay to the Plan through payroll deductions.[1] He asserts that, beginning January 2007 through 2009, the Firm and Kwasny withdrew contributions from employees' paychecks but purposefully failed to deposit those contributions into the Plan in a timely manner.[2] He alleges that the contributions were

---

[1] A defined contribution ERISA employee benefit plan such as the one at issue allows plan members to contribute a portion of their salary, pre-tax, into individual retirement accounts. See 29 U.S.C. § 1002(34). ERISA was enacted to create "complex and far-reaching rules designed to protect the integrity of [employee benefit] plans and the expectations of their participants and beneficiaries." Barrowclough v. Kidder, Peabody & Co., 752 F.2d 923, 929 (3d Cir. 1985), overruled on other grounds, Pritzker v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 7 F.3d 1110, 1111 (3d Cir. 1993).

[2] The Secretary alleges that $40,416.30 in employee contributions were never deposited into the Plan, while $2,099.06 in contributions were eventually deposited late and without interest. He seeks from the Firm the $40,416.30 in

commingled with Firm general assets and used to pay the Firm's expenses; in other words, used for the Firm's own interests. The Secretary further alleges that at all relevant times, the Firm exercised authority and control respecting management and disposition of the Plan's assets and had discretionary authority and discretionary responsibility in the administration of the Plan.

### III. LEGAL STANDARD

The Court may enter default judgment pursuant to Federal Rule of Civil Procedure 55(b). Its decision to do so "is left primarily to the discretion of the district court." Hritz v. Woma Corp., 732 F.2d 1178, 1180 (3d Cir. 1984). That discretion is not without limits, however, and the Court is required to make specific factual determinations before entering the default judgment. See Emasco Ins. Co. v. Sambrick, 834 F.2d 71, 73 (3d Cir. 1987); Hritz, 732 F.2d at 1181. "A consequence of the entry of a default judgment is that the factual allegations of the complaint, except those relating to the amount of damages, will be taken as true." Comdyne I, Inc. v. Corbin, 908 F.2d 1142, 1149 (3d Cir. 1990) (internal citations omitted).

---

withheld contributions along with $9,798.85 in pre-judgment interest.

**IV. DISCUSSION**

    A.   The ERISA Violations

The Secretary asserts that the allegations described above establish that the Firm breached its duties under ERISA to: (1) ensure that Plan assets are held in a trust account, 29 U.S.C. § 1103; (2) act solely in the interest of the Plan participants and their beneficiaries, 29 U.S.C. § 1104(a)(1)(A)); (3) act prudently, 29 U.S.C. § 1104(a)(1)(B); (4) prevent the Plan from engaging in a direct or indirect transfer of Plan assets for the benefit or use of a party in interest, 29 U.S.C. § 1106(a)(1)(D); and (5) refrain from dealing with the Plan's assets for the fiduciary's own interest, 29 U.S.C. § 1106(b)(1). The Court agrees with the Secretary's assessment of the violations.

    B.   The Entry of Default Judgment

Before entering default judgment, the court must consider "some or all of the six-part test enunciated in Poulis v. State Farm Fire and Casualty Co., 747 F.2d 863, 868 (3d Cir. 1984)." Hoxworth v. Blinder, Robinson & Co., 980 F.2d 912, 919 (3d Cir. 1992) (internal citations omitted); see also Anchorage Assocs. v. Virgin Islands Bd. of Tax Review, 922 F.2d 168, 177 (3d Cir. 1990) (providing that "[d]epending on the record before the court, consideration of one or more of the Poulis factors

may be required when a party moves under . . . Rule 55(b) for a default judgment as a sanction for a failure to plead or otherwise defend").

> Those factors are:
>
> (1) the extent of the party's personal responsibility; (2) the prejudice to the adversary . . .; (3) a history of dilatoriness; (4) whether the conduct of the party or the attorney was willful or in bad faith; (5) the effectiveness of sanctions other than dismissal, which entails an analysis of alternative sanctions; and (6) the meritoriousness of the claim or defense.

Poulis, 747 F.2d at 868 (emphasis omitted). Here, the Firm appears to be completely responsible for its failure to defend. It was properly served and one of its named partners has been litigating the case on his own behalf. As a result, its conduct also appears to have been willful. The prejudice to the Secretary is great given that it has been deprived of its ability to litigate the ERISA violations against the Firm. For this reason, no other alternative sanctions appear appropriate. In that the Firm has not entered an appearance, responded to any motion or pleading, or in any way been involved in the case, there is a complete history of dilatoriness. Finally, based on the Secretary's allegations, it appears that his claim is meritorious while the Firm lacks a valid defense. As a result, the entry of default judgment is warranted.

C.  Relief Requested

In his motion, the Secretary requests the following relief against the Firm: (1) restitution of the $40,416.30 in withheld employee contributions as well as $9,798.85 in pre-judgment interest for a total of $50,215.15; (2) removal of the Firm as a Plan administrator and the appointment of an independent Plan fiduciary, paid for by the Firm, to manage and dispose of the Plan assets; and (3) a permanent injunction against the Firm ever serving as a fiduciary of any other ERISA plan.

> When an ERISA fiduciary breaches his duties, it is:
>
> personally liable to make good to such plan any losses to the plan resulting from each such breach, and to restore to such plan any profits of such fiduciary which have been made through use of assets of the plan by the fiduciary, and shall be subject to such other equitable or remedial relief as the court may deem appropriate, including removal of such fiduciary.

29 U.S.C. § 1109(a). The Court must require a breaching fiduciary to restore a plan to the position it would have been in but for that fiduciary's illegal conduct. Perez v. Koresko, 86 F. Supp. 3d 293, 392-93 (E.D. Pa. 2015) (citing Donovan v. Bierwirth, 754 F.2d 1049, 1056 (2d Cir. 1985)). "A federal court enforcing fiduciary obligations under ERISA is thus given broad equitable powers to implement its remedial decrees." Delgrosso v. Spang & Co., 769 F.2d 928, 937 (3d Cir. 1985).

Because the Firm withheld employee contributions from the Plan, restitution of those funds is the obvious first step in the restoration of the Plan. Moreover, the availability of prejudgment interest on those amounts "exists to make plaintiffs whole and to preclude defendants from garnering unjust enrichment." Nat'l Sec. Sys., Inc. v. Iola, 700 F.3d 65, 102 (3d Cir. 2012); Anthuis v. Colt Indus. Operating Corp., 971 F.2d 999, 1010 (3d Cir. 1992) (providing that "in the district court's discretion, prejudgment interest may be awarded for a denial of pension benefits"). When the Firm failed to deposit the funds into the Plan, it deprived the participants of the interest on their investment. In order to place the Plan and its participants in the same position that they would have been in, but for the breaches, the Firm must also remit interest on the withheld funds.

The Secretary suggests that the appropriate interest rate is the rate that the IRS charges taxpayers who underpay their taxes. See 26 U.S.C. § 6621; McLaughlin v. Cohen, 686 F. Supp. 454, 458 (S.D.N.Y. 1988) (applying the IRS rate from Section 6621 and noting that "the interest rate allowable in ERISA cases is like other elements of an equitable recovery, subject to the discretion of the Court") (internal quotation marks omitted). The Court concludes that the IRS rate is equitable.

Among the Court's equitable powers is the power to remove fiduciaries. 29 U.S.C. § 1109(a). Indeed, removal of fiduciaries is regularly recognized as an appropriate remedy upon findings of imprudence, divided loyalties and prohibited transactions. Reich v. Lancaster, 55 F.3d 1034, 1054 (5th Cir. 1995); Donovan v. Mazzola, 716 F.2d 1226, 1238-39 (9th Cir. 1994); Beck v. Levering, 947 F.2d 693, 641 (2nd Cir. 1991). With the Firm's removal, a new Plan fiduciary must be installed. This is an expense that would not have accrued but for the Firm's breaches. Therefore, it is just that it pay the costs associated with the fiduciary in order to make the Plan whole. See Chao v. Malkani, 216 F. Supp. 2d 505, 518-19 (D. Md. 2002), aff'd, 452 F.3d 290 (4th Cir. 2006) (ordering the defendants to pay the costs associated with an independent trustee); see also Mazzola, 716 F.2d at 1238 (affirming the district court's decision to appoint an investment manager).

Finally, the broad authority granted the Court to provide relief under ERISA permits it to bar serious ERISA violators from serving as fiduciaries or service providers to ERISA-covered plans. Serious misconduct is grounds for a permanent injunction without a showing of future harm. See Lancaster, 55 F.3d at 1054; Beck, 947 F.2d at 641. The Firm has failed to fulfill its duties as an ERISA fiduciary and has used Plan assets for its own benefit. In that the Firm cannot be

entrusted managing ERISA-covered plans or their assets, a permanent injunction barring the Firm as a fiduciary is justified.

## V.   CONCLUSION

For the reasons set forth above, the Court will grant the Secretary's motion for default judgement, entering judgment in his favor and against the Firm, and award the remedies discussed above.

An appropriate order entering judgment follows.